# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| **MARION JAY VANSCHOIACK** ) | |
| **and LYNETTE LYNAE** ) | |
| **VANSCHOIACK,** ) | Case No. 05-02040-TLM |
| ) | |
| **Debtors.** ) | |
| _____ ) | |
| ) | **MEMORANDUM OF DECISION** |
| **LOIS K. MURPHY, TRUSTEE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Adv. No. 05-06043-TLM |
| v. ) | |
| ) | |
| **MARION JAY VANSCHOIACK** ) | |
| **and LYNETTE LYNAE** ) | |
| **VANSCHOIACK,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**INTRODUCTION**

Marion Jay VanSchoiack ("Jay") and Lynette Lynae VanSchoiack ("Lynette") (together "Debtors") filed a voluntary chapter 7 petition on May 24, 2005. *See* Ex. 1. Lois Murphy ("Trustee") was appointed as the chapter 7 trustee.

On July 18, 2005, Trustee, acting *pro se*, timely filed this adversary proceeding generally alleging Debtors' discharge should be denied "under Section 727" for failure to disclose assets. Doc. No. 1 at 2. Following answer and a pretrial conference, Trustee filed an amended complaint on May 30, 2006, with the assistance of counsel, asserting causes under § 727(a)(2) and § 727(a)(4) and

MEMORANDUM OF DECISION - 1

specifically identifying assets allegedly concealed and undisclosed. *See* Doc. No. 14.

After trial on September 20, 2006, the Court took the matter under advisement. The following constitutes the Court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 7052.

**FACTS**

**A. The ATV**

Within six months preceding bankruptcy, Jay signed a contract with Grizzly Sports to purchase a 2003 Polaris 500cc All-Terrain Vehicle (the "ATV"). Ex. 3 at 2 (agreement dated November 24, 2004). Jay traded in a previously owned ATV for a $2,800.00 credit toward the purchase, and it was agreed that Jay could make installment payments on the $1,810.00 balance. *Id.* While Jay made payments, Grizzly Sports retained possession of the ATV. The same day Jay signed the contract, he paid $610.00 to Grizzly Sports in connection with the ATV, leaving a $1,200.00 balance. *Id.* at 2; at 7, check no. 2190. He made a $600.00 payment on December 4, 2004. *See id.* at 2; at 8, check no. 2197. His third payment, in the amount of $310.00, was made on February 5, 2005. *See id.* at 2; at 9, check no. 2246. These checks were written on Jay's business checking account, but Jay testified Lynette was aware of the purchase.

On May 11, 2005, Debtors signed their bankruptcy petition, and it was

MEMORANDUM OF DECISION - 2

subsequently filed on May 24, 2005.  *See* Ex. F, *but compare* Ex. 1.[1]  Debtors' schedules did not reflect ownership of or any interest in the ATV or any deposits with Grizzly Sports.  *See* Ex. 1.  Nor did Debtors' statement of financial affairs reflect any of the payments to Grizzly Sports or the trade-in of the previously owned ATV.  *See* Ex. 2.  Debtors' schedules also failed to disclose either Jay's business checking account on which the checks to Grizzly Sports were written or the household checking account he testified his wife managed.

On May 26, 2005, two days after Debtors' petition was filed, Jay made a final payment of $361.73 to Grizzly Sports on the ATV from his business checking account.  *See* Ex. 3 at 10, check no. 2319.  After making this final payment, Debtors obtained possession of the ATV and used it over the Memorial Day weekend.  Debtors did not disclose their acquisition of the ATV at their June 21, 2005 § 341 meeting.[2]  It was only later, after Trustee discovered the ATV and initiated this adversary proceeding, that Debtors amended their schedules to reflect

---

[1] Debtors' first attorney, C. Grant King, filed the petition electronically, asserting that Debtors signed it on May 24, 2005.  Jay testified, however, that he and his wife signed the petition on May 11, 2005 and introduced a photocopy of the original, containing their signature and a May 11, 2005 date.  This raises a serious issue.  Electronically filed pleadings and documents must contain accurate information.  This Court's CM/ECF procedures guideline specifically states: "A Registered Participant filing a Verified Pleading electronically shall insure that the electronic version conforms to the original, signed pleading/document. . . . The electronic filing of a Verified Pleading constitutes a representation by the Registered Participant that he or she has the original, signed document in his or her possession at the time of filing."  The representation made by Debtors' first counsel in this case appears to be false as the original document clearly does not conform with what was filed.

[2] The June 21, 2005 meeting was continued to July 8, 2005 in order for Lynette to provide verification of her Social Security number.  On July 11, 2005, after the meeting took place, Trustee filed a report of no distribution.  Within a week of filing the report, Trustee discovered the ATV, withdrew the no asset report, and filed the initial *pro se* complaint herein.

MEMORANDUM OF DECISION - 3

their ownership interest.  *See* Case No. 05-02040-TLM at Doc. Nos. 22, 23.[3]

### B. Accounts receivable

Jay owns and operates his own business, JV Electric.  *See* Ex. 2 at question 18.  Jay is an independent electrical contractor and works mainly on new construction.  He explained he gets paid by builders based upon completion of work.  Typically he is paid 65% after the rough-in phase is completed and the remaining 35% after trim work is done.  Payments come in after the work is performed, and his income depends on the number of jobs he works each month and their stages of completion.  With this type of business, he carries over from month to month accounts receivable from the builders who hire him.  Yet, no such accounts were disclosed in Debtors' schedules.  *See* Ex. 1.  Nor were they added when Debtors amended their schedules.  *See* Case No. 05-02040-TLM at Doc. Nos. 22, 23.

### C. Other Assets

Through Jay's testimony, the Trustee established other assets existed that were not disclosed.  As mentioned, Jay's business checking account and Lynette's household account were not listed in Debtors' schedules.  On the date Debtors filed their bankruptcy petition, Jay's business checking account had a $399.28 balance.  *See* Ex. 11.  Debtors also failed to disclose a time-share interest with

---

[3] Debtors amended schedule B to list their ownership of the ATV, schedule C to claim an exemption in the ATV and schedule D to list Grizzly Sports as a secured creditor in the ATV for the $310.00 purchase price remaining due at the time Debtors filed their bankruptcy petition.

MEMORANDUM OF DECISION - 4

Trendwest. Trendwest was not listed as a creditor nor was any time-share interest claimed as an asset. In many ways, the exact nature of Debtors' interest in and obligations to Trendwest are still unclear.

**DISCUSSION AND DISPOSITION**

    **A.**    **Amendment of complaint to conform to evidence**

Trustee's amended complaint was filed, with help of counsel, some ten months after her *pro se* complaint. The amended complaint seeks to deny Debtors' discharge under § 727(a)(2) and § 727(a)(4) specifically alleging Debtors "failed to disclose several items of personal property on their schedules including, but not limited to a tent trailer, horse trailer, and cash consisting of $4,600 which was later used by the defendants to purchase a Suburban after filing their petition." Doc. No. 14 at 2. In addition, Trustee alleges Debtors "failed to disclose a 2003 ATV, but later amended their schedules on August 8, 2005, to include the ATV after it was discovered by the Trustee." *Id.*

Trustee abandoned any cause of action based on the trailers or the cash/Suburban transaction.[4] Trustee instead focused on the purchase of the ATV

---

[4] Trustee evidently concluded prior to trial she would abandon the causes of action based on these alleged transactions, but never informed Debtors. Debtors thus prepared their case based on the Trustee's amended complaint, and they obtained witnesses and spent time preparing to defend allegations Trustee had no intention of pursuing. Trustee could have, and should have, clarified her position in the pretrial brief she was required to file by the terms of the Pretrial Order. *See* Doc. No. 13 at 2. However, she "declined" to file that brief and, when reminded of the obligation, filed a document that was short, conclusory, and unenlightening. Other than a general reference to the ATV, it did not discuss the allegations of the complaint. It gave no indication that any of the pleaded contentions would be abandoned. It addressed no authority other than quoting from § 521 and § 727. Absent the quoted material, the brief is but 10 lines

(continued...)

MEMORANDUM OF DECISION - 5

mentioned in the amended complaint. She also focused on Debtors' failure to disclose the accounts receivable, checking accounts, time-share interest, and cash on hand, none of which were referenced in the amended complaint. Trustee introduced evidence at trial on each of these topics without objection from Debtors. Both parties rested.

Following the close of evidence, Trustee argued Debtors should be denied discharge under § 727(a)(2) and § 727(a)(4) for failing to disclose all of these assets. After questioning by the Court, Trustee made an oral motion[5] that her complaint be amended to conform to the evidence presented. At that point, Debtors objected.

Federal Rule of Bankruptcy Procedure 7015 makes Federal Rule of Civil Procedure 15(b) applicable in adversary proceedings. Federal Rule of Civil Procedure 15(b) provides:

> **(b) Amendments to Conform to the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely

---

[4](...continued)
long, and says nothing that is not already said in the complaint. Something as serious as denial of discharge deserves better. So, too, do considerations of professional courtesy and respect for adversaries and the judicial system.

[5] *See* Fed. R. Bankr. P. 9013

MEMORANDUM OF DECISION - 6

> when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence**.**

In general, "as long as no element of undue prejudice or surprise is present, the court has broad discretion to permit evidence which does not conform to the pleadings to resolve the merits of the dispute." 10 Collier on Bankruptcy ¶ 7015.05, 7015-7 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2006). *See also Yadidi v. Herzlich (In re Yadidi)*, 274 B.R. 843, 851-52 (9th Cir. BAP 2002) (noting that "[w]hen facts probative of claims actually alleged in the pleading came into evidence at trial without objection, the factual issues (i.e. the factual allegations that would have saved the complaint from being deficient) were tried by implied consent of the parties" and were required to be treated "as if they . . . had been raised in the pleadings."); *Fitzgerald v. Bauer Pontiac-Cadillac-Buick-GMC, Inc. (In re Nedrow)*, 95 I.B.C.R. 198, 201 (Bankr. D. Idaho 1995) (determining that because Defendant had ample opportunity to respond to Plaintiff's argument, it was not prejudiced and the Plaintiff's pleadings could be amended to conform to the evidence).

      Here, the Court concludes that, even given the problems with Trustee's lack of pretrial candor regarding the contentions to be pursued, there was no unfair surprise and Debtors were not prejudiced by the inquiries regarding the non-ATV assets. Trustee's amended complaint stated that the § 727(a)(2) and § 727(a)(4)

MEMORANDUM OF DECISION - 7

causes were based on Debtors' failure to disclose assets. While the complaint described several specific assets, it also specifically stated that list of assets may be under-inclusive. *See* Doc. No. 14 at 2 (characterizing the undisclosed assets as "including, but not limited to" those listed). Debtors were thus aware that Trustee was challenging and closely scrutinizing Debtors' sworn schedules and statements. Debtors reasonably should have evaluated their bankruptcy submissions and prepared themselves to address questions regarding any of their assets and transactions, particularly any that were undisclosed or arguably inadequately disclosed.

Trustee does not attempt to add a new legal cause of action. Rather, she requests through her Rule 15(b) motion that the Court consider all the facts presented at trial that might support her pleaded § 727(a)(2) and § 727(a)(4) causes. Such facts – related to the existence of assets not disclosed in Debtors' schedules – were within Debtors' knowledge.

In addition, all the evidence regarding accounts receivable, checking accounts, time-share interest, and cash on hand was introduced at trial without objection from Debtors, and Debtors' counsel in fact examined Jay on these matters. Silence from the Debtors connotes implied consent to amendment of the pleadings. *See Yadidi*, 274 B.R. at 851-52; *Sarbaz v. Feldman (In re Sarbaz)*, 227 B.R. 298, 299-300 (9th Cir. BAP 1998) (citing 6A Wright, Miller and Kane, Federal Practice and Procedure, § 1493 at 24 (2d ed.1990) and noting "consent is

MEMORANDUM OF DECISION - 8

generally found when evidence relating to issues that are beyond the pleadings is introduced without objection.").

The pleadings are therefore amended to conform to the evidence presented without objection at trial.

### B.     § 727(a) objections in general

Objections to discharge are liberally construed in favor of debtors, and strictly against objectors. *Palmer v. Downey (In re Downey)*, 242 B.R. 5, 12-13, 99.4 I.B.C.R. 165, 168 (Bankr. D. Idaho 1999) (citing *In re Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996); *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 754 (9th Cir. 1985)).  This construction is consistent with the purpose of providing debtors a "fresh start," and recognizes that denial of discharge is among the harshest remedies under the bankruptcy laws. *Downey*, 242 B.R. at 12-13, 99.4 I.B.C.R. at 168 (citing *Weiner v. Perry, Settles & Lawson (In re Weiner)*, 161 F.3d 1216, 1218 (9th Cir. 1998)).

Despite this favorable construction, a bankruptcy discharge is equitable in nature, and intended only for honest debtors. *Downey*, 242 B.R. at 13, 99.4 I.B.C.R. at 168 (citing *Bernard*, 96 F.3d at 1283).  The party asserting denial of discharge under § 727(a) must prove the elements of the cause of action by a preponderance of the evidence and not by a more heightened standard. *Grogan v. Garner*, 498 U.S. 279, 284 (1991); *Beauchamp v. Hoose (In re Beauchamp),* 236 B.R. 727, 730 (9th Cir. BAP 1999).

MEMORANDUM OF DECISION - 9

### C.    Cause of action under § 727(a)(4)(A)

Section 727(a)(4)(A) requires denial of discharge if:

> [T]he debtor knowingly and fraudulently, in or in connection with the case – (A) made a false oath or account[.]

To bring a successful § 727(a)(4)(A) claim, the Trustee must show: (1) the Debtors made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently. *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005) (citing *Fogal Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (9th Cir. BAP 1999)).

#### 1.    False oath

A "false oath" under § 727(a)(4)(A) includes false affirmative statements, or knowing omissions, on a debtor's schedules and statement of financial affairs, which are signed under penalty of perjury. *Roberts*, 331 B.R. at 882; *Downey*, 242 B.R. at 13, 99.4 I.B.C.R. at 168.[6]

Trustee has, by a preponderance of the evidence, established Debtors' assets at filing included the ATV, accounts receivable, two bank accounts, an interest in a time-share and cash in Jay's business checking account.  It is also clear these

---

[6] A debtor is required to make full and complete disclosure of assets, liabilities and transactions. *See* § 521; Fed. R. Bankr. P. 1007(b).  This requirement is enforced, *inter alia*, by § 727(a)(4).  The function of the requirement is to ensure accurate and dependable information is given to the Court, trustee, and creditors upon which they can rely without the need for additional inquiry. *Downey*, 242 B.R. at 13, 99.4 I.B.C.R. at 168 (citing *Aubrey v. Thomas (In re Aubrey)*, 111 B.R. 268, 274 (9th Cir. BAP 1990)).  Debtors may not elect what to disclose; all property and interests in property must be disclosed. *Downey*, 242 B.R. at 13-14, 99.4 I.B.C.R. at 168.

MEMORANDUM OF DECISION - 10

assets were not listed on Debtors' schedules nor related transactions shown on their statement of financial affairs. Debtors did not correct these omissions at their § 341(a) meeting of creditors. Debtors amended their schedules only after Trustee discovered the ATV, and then only corrected the omission of the ATV.

### 2. Material fact

The word "material" does not appear in § 727(a)(4), but a plaintiff must show the "false oath or account" relates materially to the bankruptcy. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 208 B.R. 69, 71 (9th Cir. BAP 1997), *rev'd on other grounds*, 161 F.3d 1216 (9th Cir. 1998). As *Weiner* stated:

> In determining whether the false statement is material, the court looks to whether the statement bears a relationship to the debtor's estate, and concerns the discovery of assets, or the existence and disposition of his property. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). "The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless relationship or holding; such a defense is specious." *Id*. at 618.

208 B.R. at 72. *See also Roberts*, 331 B.R. at 883. The asset's value need not be "material," nor must a debtor "succeed in harming creditors to warrant denial of discharge." *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d, 1279, 1281-82 (9th Cir. 1996) (quoting *First Beverly Bank v. Adeeb (In re Adeeb)*, 787 F.2d 1339, 1343 (9th Cir. 1986)). A "lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy." *Id*. *See also Roberts*, 331 B.R. at 883.

Here, the omissions Trustee relies upon were material. They concern assets

MEMORANDUM OF DECISION - 11

of the estate and possible disposition of property. While the assets need not have value to be material, it is nonetheless clear some of these assets were valuable. For example, the Trustee has recovered $3,900.00 in net proceeds from the sale of the undisclosed ATV.[7] *See* Case No. 05-02040-TLM, Doc. No. 39.

The evidence also demonstrates Jay had outstanding, pre-petition accounts receivable. Jay provided electrical services and was only paid after a specified stage of completion on a project. While he testified that these payments tended to come in on the 10th of the month, the evidence demonstrates the deposits into his business account were scattered throughout the month, and those deposits came from collection of his accounts receivable. Such income into Jay's business account ranged from a low of $6,033.08 in May 2005 to a high of $31,517.06 in July 2005, with an average of approximately $18,000.00 per month in gross payments on accounts receivable over an eleven month period. *See* Exs 4-14 (bank statements from October 2004 to August 2005). In May, when Debtors filed for bankruptcy relief, the deposits into Jay's business account totaled only $6,033.08, $3,403.08 of which was deposited after Debtors filed their bankruptcy petition. In addition, he collected $17,867.65 the following month and $31,517.06 the month after. There is no proof as to what portion of these later collected funds is attributable to pre-bankruptcy accounts receivable. However, Jay admitted at

---

[7] Though the value of this undisclosed asset has been established by its sale, the ultimate value to the estate and benefit to creditors is unclear. Debtors claimed an exemption in the ATV and the funds from the sale of the ATV. Trustee objected to that exemption, and Debtors filed a response. That matter has not yet been resolved.

MEMORANDUM OF DECISION - 12

trial he had outstanding accounts receivable at the time Debtors filed for bankruptcy.

Thus, while the evidence does not establish the precise amount of accounts receivable outstanding at the time Debtors filed bankruptcy, it is clear Jay had undisclosed accounts receivable that were property of the estate. Moreover, Jay collected those accounts, retained the value, and failed to provide those funds to the Trustee. The undisclosed accounts receivable are "material" within the case law.

### 3. Knowledge and fraudulent intent

The false oath must be made "knowingly" by the debtor. *Roberts* notes "[a] person acts knowingly if he or she acts deliberately and consciously." 331 B.R. at 883-84 (citing Black's Law Dictionary 888 (8th ed. 2004)).[8] In addition, the Court must find the false oath was made fraudulently. *Roberts*, 331 B.R. at 884. The intent required is actual, not constructive, and echoes the well established standard in common law fraud that a person make the knowingly false representations "with the intention and purpose" of deceiving. *Id.* (citing *Anastas v. Am. Savs. Bank (In re Anastas)*, 94 F.3d 1280, 1284 (9th Cir. 1996)); *see also Devers*, 759 F.2d at 753. Actual fraudulent intent may be established through circumstantial evidence, including inferences from the debtor's conduct, all surrounding circumstances, and

---

[8] *Roberts* distinguishes "careless" and "reckless" statements from "knowingly" false ones, holding that only false statements or nondisclosures made "knowingly" fall within § 727(a)(4)(A). *Id.* at 884.

MEMORANDUM OF DECISION - 13

apparent course of conduct. *Roberts*, 331 B.R. at 884 (citing *Devers*, 759 F.2d at 753-54; *Wills*, 243 B.R. at 64)).

### a. ATV

Here, Debtors signed their schedules on May 11, 2005, disclosing no ownership interest in the ATV. While Jay testified that failure to list the ATV was an oversight, the evidence as a whole contradicts the assertion of mere mistake.

The Court has carefully considered all of Jay's testimony and his credibility. Credibility is a critical aspect of every § 727(a) case.[9] Here, evaluation of credibility was impacted by Debtors' counsel's consistently leading questions. Answers to such questions left little testimony for the Court to evaluate. Jay was not given, in his counsel's examination, the opportunity to provide detailed explanations regarding the errors in Debtors' schedules.[10] The Court must look to other evidence in addition to Jay's testimony.

It is uncontested that Jay made semi-regular payments on the ATV in November, December, and February, and that Lynette was aware of these payments. Debtors completed the purchase of their ATV by the end of May – within two weeks of signing their schedules and just days after the petition was filed. At the time they filed their schedules, they knew that, at a minimum, they

---

[9] *See, e.g.*, *Hopkins v. Hugues (In re Hugues)*, 349 B.R. 72 (Bankr. D. Idaho 2006), in which the Court determined debtors presented credible testimony negating fraudulent intent and thus denied the chapter 7 trustee's attempt to revoke the debtor's discharge under § 727(d)(1).

[10] As merely one of several examples, Debtors' counsel asked Jay if Debtors had failed to disclose the ATV because it was not in their garage and thus they did not know they had an interest in it. Jay's response was "That's probably correct."

MEMORANDUM OF DECISION - 14

had an interest in the ATV to the extent of the $4,320.00 they had paid to that point.[11]  They did not disclose that interest in any fashion.  Nor did they simply forget they had such an interest.  They actively pursued the purchase of the ATV before and after signing their schedules on May 11 and concluded their transaction with Grizzly Sports two days following their petition's filing.  In addition, Debtors testified at their June § 341(a) meeting of creditors that their schedules, which were void of any reference to the ATV, were true and correct.  Debtors made this representation less than a month after making the final ATV payment and actually using the ATV over the Memorial Day weekend.  It was only after the Trustee discovered the ATV that Debtors amended their schedules to include it.  All these facts and circumstances surrounding the purchase of the ATV and Debtors' failure to disclose it lead the Court to conclude the omission was done with knowledge and fraudulent intent.

### b. Accounts receivable

Like the ATV, Debtors failed to disclose any accounts receivable from Jay's business.  Such accounts were shown to have value even if Trustee was unable to establish a precise figure and, whatever their value, they were material as defined in *Weiner*.  Debtors were aware of how Jay's business operated and that

---

[11] Trustee argues the deposition of Jeff Flynn establishes Debtors held title to the ATV at the time their bankruptcy petition was filed and they must have known they owned the vehicle. After reviewing the deposition, the Court cannot confirm Trustee's assertion regarding title or determine when the certificate of title was issued, though the documents do demonstrate Debtors were purchasing an ATV and had an interest in the same.  Indeed, Debtors admit such an interest in their amended schedule B.  *See* Case No. 05-02040-TLM at Doc. No. 22.  However, the question of when title was ultimately issued is not determinative.

MEMORANDUM OF DECISION - 15

outstanding accounts receivable existed. Jay testified he expected to receive payments sometime in June on work he performed prior to filing bankruptcy in May. Indeed, two days after Debtors' petition was filed, $1,800.00 was deposited into his business account and another $1,001.28 was deposited the following day. *See* Ex. 11. Given the structure of Jay's business, that such deposits represent collection of pre-petition accounts receivable is undisputed.

The circumstances provide preponderating proof that Debtors knew of this asset and, with fraudulent intent, failed to disclose it. Debtors' income was based mainly upon Jay's business. They were aware that accounts receivable existed; those accounts were the source of their livelihood. Yet, such an integral part of Debtors' lives was left off their schedules.[12] In fact, the receivables were collected and retained by Debtors immediately after bankruptcy.

While Jay denied any intent to conceal the accounts, the whole of the evidence, including the lack of a good or plausible explanation for the omission and nondisclosure, establishes intent to conceal the accounts receivable. Jay did not cogently explain why the outstanding accounts were not initially listed or why the collected accounts receivable were not turned over to the Trustee to be administered for the benefit of creditors.

---

[12] Given that Jay was self employed, the Court finds it hard to believe the Trustee did not inquire about accounts receivable or business accounts at the first meeting of creditors. However, the Trustee did not testify at trial, nor was a transcript of the meeting of creditors provided, and the Court is left with only Jay's testimony.

MEMORANDUM OF DECISION - 16

### c. Other Assets

Trustee also focuses on the Debtors' bank accounts, cash on hand in Jay's business checking account and the time-share interest with Trendwest. These assets were not disclosed and were shown to exist. Debtors were required to disclose these assets, irrespective of their value.[13]

However, Trustee did not establish that Debtors intentionally and fraudulently failed to disclose these assets. The Trustee's case regarding Jay's business checking account and the other assets was obviously cobbled together as Jay's testimony came in. Whether for that reason or not, little was established beyond the existence of the assets and Debtors' failure to disclose them. Unlike the situation with the ATV and the accounts receivable, Trustee did not establish Debtors' fraudulent intent.

### 4. Judgment

Judgment will be entered in favor of the Trustee on her § 727(a)(4) cause of action regarding the undisclosed ATV and the accounts receivable since all the required elements of that cause were established by a preponderance of the evidence as to those assets.

Moreover, the judgment will be entered against both Debtors. While the quantum of evidence regarding Lynette was less than that involving Jay, what

---

[13] Jay's explanation that there was no money in Lynette's bank account at the time does not excuse their failure to disclose the account, though it does negate intent. The schedules require full disclosure of all assets, including bank accounts, regardless of their value. *See supra* note 5.

MEMORANDUM OF DECISION - 17

evidence there was – including Jay's own testimony about Lynette's knowledge – made out a prima facie case. Lynette signed the schedules that omitted mention of either the ATV she knew Debtors were purchasing or the accounts receivable that provided income to the family. Debtors completed the purchase and used the ATV at the end of May on a family trip. Yet, neither Debtor remedied those omissions at the § 341(a) meeting of creditors. Debtors presented no evidence to attempt to rebut that prima facie case.

The rest of Trustee's § 727(a)(4)(A) case will be dismissed.

### D. Causes of action under § 727(a)(2)(A) and § 727(a)(2)(B)

Trustee does not explain her § 727(a)(2)(A) and § 727(a)(2)(B) causes of action other than, at least implicitly, arguing that failure to disclose assets in schedules is tantamount to "concealment" of such property under § 727(a)(2). And Trustee does not distinguish at all between subparagraphs (A) and (B) of § 727(a)(2). Given that Debtors' discharge will be denied under § 727(a)(4) for the false oath regarding the ATV and the accounts receivable, the Court has no practical reason to attempt to analyze Trustee's undeveloped and unbriefed arguments on the § 727(a)(2) causes, which would provide only superfluous relief.

## CONCLUSION

Debtors knowingly failed to disclose two assets on their bankruptcy schedules and/or transactions regarding the same on their statement of financial affairs: the ATV and the accounts receivable. Based on the evidence presented,

MEMORANDUM OF DECISION - 18

the Court finds such omissions were material and made with knowledge and fraudulent intent. As such, Debtors' discharge will be denied under § 727(a)(4).

Trustee shall submit a form of Judgment consistent with this Decision.

DATED: November 9, 2006

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

## CERTIFICATE OF SERVICE

A "notice of entry" of this Decision, Order and/or Judgment has been served on Registered Participants as reflected by the Notice of Electronic Filing. A copy of the Decision, Order and/or Judgment has also been provided to non-registered participants by first class mail addressed to:

Jay & Lynette Vanschoiack
7197 E. Hampton Ln
Nampa, ID 83687-9469

Case No. 05-06043-TLM

Dated: November 9, 2006

      /s/
Suzanne Hickok
Law Clerk to Chief Judge Myers